UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLYDE MARTIN,

        Plaintiff,                                Civil Action No. 12-15093

      v.                                  District Judge Stephen J. Murphy, III
                                          Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Clyde Martin maintains that his depression and pain prevent him from working. In 2004, when he was 49 years old, Martin applied for supplemental security income under the Social Security Act. In January 2008, an administrative law judge acting on behalf of Defendant Commissioner of Social Security concluded that Martin was not disabled within the meaning of the Act. Martin challenges that decision here. Before the Court for a report and recommendation are the parties' cross-motions for summary judgment. (Dkts. 2, Notice of Referral; Dkt. 13, Pl.'s Mot. Summ. J.; Dkt. 15, Def.'s Mot. Summ. J.) The basis for Martin's motion is that the administrative law judge incorrectly discounted his testimony of disabling limitations which then led the ALJ to solicit incorrect testimony about jobs that he could perform. (*See* Pl.'s Mot. Summ. J. at 6-15.) Upon a review of the administrative record, the Court finds that substantial evidence supports the ALJ's decision to discount Martin's testimony of severe functional limitations. As such, this Court RECOMMENDS that Defendant's Motion for Summary Judgment (Dkt. 15) be GRANTED, that

Plaintiff's Motion for Summary Judgment (Dkt. 13) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

### A. Procedural History

In 2004, Martin applied for supplemental security income under the Social Security Act asserting that he became unable to work on March 4, 2003. (Tr. 18.)[1] Michigan's Disability Determination Service reviewed Martin's case and denied Martin's application in April 2005. (*Id.*) Martin then requested an administrative hearing, and in December 2007, he testified about his impairments before Administrative Law Judge Peter N. Dowd. (Tr. 424-61.) In a January 2008 decision, the ALJ found that Martin was not under a "disability" as that term is used in the Social Security Act. (*See* Tr. 18-24.) The ALJ's decision became the final decision of the Commissioner over four-and-a-half years later, on September 19, 2012, when the Social Security Administration's Appeals Council denied Martin's request for review. (Tr. 3.)[2] Martin filed this suit on November 17, 2012. (Dkt. 1, Compl.)

---

[1] The ALJ found that Martin applied for disability benefits in December 2004. (Tr. 18.) But this is inconsistent with the fact that Martin completed a Disability Determination Service "Function Report" on March 14, 2004 (Tr. 60) and underwent a Disability Determination Service consultative exam in May 2004 (Tr. 147-50). The Court does not resolve this ambiguity as it does not affect the Court's decision to affirm or reverse the ALJ's decision.

[2] Apparently, the lengthy delay between the ALJ's decision and the Appeals Council's decision was because Martin did not seek Appeals Council review until February 2011. (Tr. 12.)

**B. Medical Evidence**

*1. Physical Impairments*

As will be discussed in more detail below, Martin's appeal is based in significant part on his claim that the ALJ erred in failing to credit his testimony about his physical impairments. (*See* Pl.'s Mot. Summ. J. at 10.) Yet there are very few treatment records pertaining to Martin's physical condition during the disability period. The record contains many medical records from the period when Martin was in federal prison. But Martin's alleged disability onset date, March 4, 2003, nearly coincides with his release from prison (although Martin did stay in a halfway home for another six months). (Tr. 18, 20.) In any event, the Court has reviewed Martin's medical records from the Federal Bureau of Prisons, and it appears none pertain to Martin's testimony about his physical impairments. (*See* Tr. 152-270.)

In May 2004, Dr. Samiullah H. Sayyid evaluated Martin for Michigan's Disability Determination Service ("DDS"), a state agency that helps the Social Security Administration evaluate claimants. Martin's chief complaints were high blood pressure and cholesterol, headaches, heart palpitations, and depression. (Tr. 147.) Martin told Dr. Sayyid that he had disturbed sleep, felt tired, and could not focus. (*Id.*) Dr. Sayyid also noted, "Chronic headaches for the last 20 years." (*Id.*) Dr. Sayyid's exam findings were largely normal. (Tr. 148.)

At the administrative hearing, Martin told the ALJ that he stopped working in May 2006 due to pain caused by cysts in his liver and a mass around his stomach. (Tr. 439, 443, 452.) Martin said he received treatment for these conditions from "Hamilton" which sent him to a "Dr. Omedon" who then sent him to "Genesis." (Tr. 443.) Martin also mentioned "abdominal, up on Miller Road." (Tr. 443.) Yet there are no treatment records related to cysts or a stomach mass in the administrative

record. Martin's counsel did seek extra time to submit additional records, and it may be that these records pertained to Martin's pain and cysts. (Tr. 429, 459-60.) But, as noted in his opinion, the ALJ never received any additional evidence from counsel. (Tr. 20.)

The administrative record does contain the following information arguably relevant to Martin's cysts or a stomach mass. Psychotherapy discharge summaries from 2003 mention "[u]lcer" and "stomach" problems. (Tr. 273.) In May 2005, Martin completed a "Disability Report - Appeal" in support of his supplemental security income application; there, he indicated that in May 2005 he began seeing Dr. Al-Midani for "colon, gastrointestinal" treatment (Tr. 98) and for "pain in side, back, abdomen" (Tr. 99). Martin also provided that on May 4, 2005, Dr. Al-Midani performed an abdomen, gall-bladder, liver, and kidney biopsy. (Tr. 100.) Dr. Al-Midani also reportedly prescribed Martin with Vicodin. (*Id.*) A drug-store prescription report provides that Dr. Al-Midani prescribed Martin methocarbamol in February and March 2006. (Tr. 126.) "Methocarbamol is used to treat muscle spasms/pain. It is usually used along with rest, physical therapy, and other treatment. It works by helping to relax the muscles." WebMD, *Robaxin Oral*, http://goo.gl/FptMXE.

### *2. Mental or Emotional Impairments*

From March 2003 to September 2003, Martin participated in therapy to "help with his drug and alcohol dependence and family conflicts." (Tr. 274-76.) During treatment, Martin maintained his abstinence and, by discharge, had satisfactorily completed his treatment goals. (Tr. 274.)

In February 2004, Martin began receiving mental-health treatment from Catholic Charities. (Tr. 356.) That month, Martin told Patricia Ross, a therapist at Catholic Charities, that he felt depressed during his incarceration and again after losing his job in August 2003. (Tr. 303.) In March 2004, Ross requested a medical evaluation; she wrote, "Client initially presented [with] signs

of depression. Client has been out of prison for approximately one year and has had some difficulties assimilating himself back into society. Client has little to no contact [with] his children[,] no employment and a history of substance abuse to deal [with] his problems." (Tr. 344.) In November 2004, Catholic Charities completed a "Termination Summary." (Tr. 377.) The summary indicates that Martin had stopped attending therapy in May 2004. (*Id.*) Martin's "[c]ondition at [d]ischarge" was "[n]o [c]hange." (*Id.*)

Although the date stamp is difficult to read, it appears that in April 2004, Dr. H.C. Tien, a psychiatrist, reviewed Martin's file for DDS and opined on Martin's mental functioning. (Tr. 143-46.) Dr. Tien thought that Martin's understanding and memory were "not significantly limited," his concentration was "moderately" limited, his social interaction was "not significantly limited," and his adaptation "moderately" limited. (Tr. 145.) Dr. Tien concluded, "[w]ithout physical problems, [Martin] is capable of doing a wide range of unskilled work in spite of diagnoses 12.04 [affective disorders] with 12.09 [substance addiction disorders]." (Tr. 145.)

In March 2005, DDS referred Martin for a psychological evaluation with Dr. Walter Drawl, a limited licensed psychologist whose work was reviewed by Dr. Gerard Williams, a licensed psychologist. (Tr. 342.) In addition to performing a mental-status exam, Dr. Drawl administered three tests of effort and validity. (Tr. 331-34.) On a Dot Counting Test designed to detect "suspect test-taking efforts," Martin scored in a range "usually found in individuals who are engaged in a great deal of symptom magnification." (Tr. 332.) Upon administering the Test of Memory Malingering, Dr. Drawl believed that Martin had "engaged in symptom magnification in the testing process." (Tr. 333.) Dr. Drawl also administered the Computerized Assessment of Response Bias test, a test designed to measure an examinee's attitude during the examination process. (Tr. 333.)

Dr. Drawl noted, "normally a person can only do this poorly by deliberately deciding to not perform or trying to perform badly." (Tr. 334.) In all, Dr. Drawl thought that the three test results indicated a "high level of symptom exaggeration" and that Martin's mental-status exam results would likely be affected by this "underlying tendency." (Tr. 334.) Nonetheless, Dr. Drawl opined, "[t]he Mental Status Examination revealed no difficulties in thought processes, disabling mental illness, or other psychological/psychiatric factors, which are of major concern. Mr. Martin presents as someone who is engaging in a high degree of symptom magnification." (Tr. 341.) Dr. Drawl opined, "There is nothing presented that would socially or psychologically prevent Mr. Martin from seeking, obtaining, and maintaining gainful employment." (*Id.*)

In April 2005, Dr. Rom Kriauciunas, a licensed psychologist, reviewed Martin's medical file and completed a Mental Residual Functional Capacity Assessment. (Tr. 312-14.) Dr. Kriauciunas opined,

> Claimant is able to do unskilled work. Is able to do simple tasks on a sustained basis. Claimant is moderately limited in ability to remember, carry out detailed instructions, to maintain attention and concentration for extended periods. Also, is moderately limited in ability to interact with the general public, to maintain socially appropriate behavior, and to respond to changes at work.

(Tr. 314.)

In the fall of 2007, Martin again started receiving mental-health treatment. (Tr. 397-23.) The corresponding records were not part of the record before the ALJ; instead, they were added to the record when Martin asked the Social Security Administration's Appeals Council to review the ALJ's decision. (Tr. 2.) As such, the Court cannot consider them for purposes of determining whether the ALJ's decision is supported by substantial evidence. *See, e.g.*, *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted to the Appeals Council

after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").

### C. Testimony at the Hearing Before the ALJ

At the hearing before the ALJ, Martin described his past work and explained why he stopped working. Martin testified that for about three-and-a-half months in 2003, he worked in maintenance while completing his criminal sentence in a halfway home. (Tr. 437.) When the ALJ asked, "so you were terminated because you were released from prison, not because of any physical or mental problems," Martin replied, "[w]ell they just said, like, I was fired." (Tr. 438.) Martin testified that he next worked for eight to nine months "from 2005 to maybe 2006" as a dishwasher in a restaurant. (*Id.*) In that job, Martin washed dishes, and, after closing, mopped the floors and cleaned the tables. (Tr. 438-39.) Martin said he stopped working as a dishwasher for "medical reasons": "I had a lot of pain. I was going to a doctor. They found huge cysts in my liver. And it was a mass around in my stomach." (Tr. 439.)

The ALJ inquired into the treatment Martin had received for the pain or cysts that caused him to stop working. (Tr. 443.) The hearing reporter transcribed that Martin treated with a "Dr. Omedon" (*id.*), but based on the administrative transcript as summarized above, Martin may have said "Al-Midani." In any event, this colloquy then ensued:

> [ALJ:] And what did they tell that the mass in the stomach and the liver cysts, what were they indicators of?
> [MARTIN:] Health. Three or four cysts inside in my liver.
> Q And this quote/unquote mass in your stomach, was that anything?
> A Yes.
> Q Normally when someone tells you there's a mass inside your body, that's an indication of a tumor. Now the tumor can be cancerous or benign. Do you have a tumor in your stomach?
> A Yes.
> Q And is it cancerous?

7

> A They didn't -- I was going for tests and after Medicaid cut me off I didn't follow through. I went for a lot of tests and I didn't finish.

(Tr. 443-44.) Martin testified that "Dr. Omedon" provided a lifting restriction: "He said, like, 25, 10 pounds." (Tr. 446.)

Martin's counsel inquired into Martin's depression. (Tr. 454.) Martin stated that his depression took away "a lot" of his energy. (*Id.*) He also explained that he no longer went "out and just socialize[d] with a lot of friends." (*Id.*) Martin also testified, "I don't pay attention to, like, certain things. I just get off track in a lot [of] things now." (Tr. 455.)

In terms of daily activities, Martin testified that he would help "Ms. Johnson," a retiree with whom he lived, "take out the trash" and "cut the grass." (Tr. 449.) Martin stated that he would watch football on TV, and read "sport magazines" and "People[] magazine." (Tr. 450.) Martin attended church about two times per month and did not have problems attending service. (Tr. 450-51.) Martin also stated that he enjoyed walking and riding a bike, and that he would walk "[t]hree or four blocks" and "ride the bike around the neighborhood, around the block." (Tr. 451.) When the ALJ later asked Martin about whether he could stand for six to eight hours with the option to sit on occasion, Martin explained, "When I stand now for 10, 15 minutes I hurt in my legs and my back and side hurts real bad." (Tr. 452.)

The ALJ also asked a vocational expert to testify to job availability for a hypothetical individual with functional limitations that the ALJ thought captured Martin's limitations. In particular, the ALJ asked the expert to consider someone of Martin's age, education, and work experience who could "repetitively lift weights of 10 pounds or less," maximally lift 20 pounds, stand and walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and "occasionally" climb stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 458.) Further, "from

a mental standpoint the individual [could] do simple, routine and repetitive work activities in a stable work environment and tolerate superficial contact with supervisors and co-workers" but had no limitations in terms of working with the public. (Tr. 458.) The vocational expert testified that Martin could perform his past work (while at the halfway house) as a cleaner and his past work as a dishwasher. (Tr. 458; *see also* Tr. 457.) The expert classified both of these jobs as "light," "unskilled" work. (Tr. 457.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

In his January 2008 decision, the ALJ applied this five-step framework as follows. At step one, the ALJ explained, "The claimant appears to have engaged in substantial gainful activity since December 28, 2004, the application date. However, since the claimant was paid in cash and was not working as of the hearing I have continued in the sequential evaluation." (Tr. 20.) At step two, he found that Martin had the following severe impairments: "chronic headaches, asthma, hypertension, depression and a history of polysubstance dependence." (Tr. 20.) As to Martin's cysts, the ALJ provided:

> At the hearing the claimant also alleged difficulties related to "internal bleeding" and "liver cysts." The undersigned notes that the medical evidence contained in the record fails to document the above impairments. No additional medical evidence has been submitted pertaining to any of the claimant's alleged impairments.

(Tr. 20.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 21.) Between steps three and four, the ALJ determined that Martin had the residual functional capacity to "perform a significant range of light exertional work activities." (Tr. 21.) The ALJ continued,

> The claimant is also capable of performing work activity that requires occasional stair climbing, balancing, stooping, kneeling, crouching and crawling. From a mental standpoint the claimant can do simple,

> routine and repetitive tasks in a stable work environment. The claimant can tolerate superficial contacts with supervisors and coworkers in any potential work setting.

(Tr. 21.) At step four, relying on the vocational expert's testimony about the physical and mental demands of Martin's past work, the ALJ concluded, "The claimant is capable of performing past relevant work as a cleaner and as a dishwasher (unskilled, light work) (See, Exhibit 11E). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965)." (Tr. 23.) The ALJ therefore concluded that Martin was not under a "disability" as defined by the Social Security Act. (Tr. 24.)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)

(en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

Martin raises a single claim of error. He says that the vocational expert's testimony is not substantial evidence supporting the ALJ's step-four finding that he could perform his past work as a cleaner or dishwasher. (*See* Pl.'s Mot. Summ. J. at 10, 12.) According to Martin, the expert's testimony is not substantial evidentiary support because the ALJ provided an inaccurate hypothetical for the expert to consider. Martin says that the ALJ's hypothetical should have included "limitations with contact with the general public" and limitations to account for "his trouble walking, sitting, and standing." (Pl.'s Mot. Summ. J. at 12.) In support of this claim, Martin relies on his testimony about his pain and his depression. (*See* Pl.'s Mot. Summ. J. at 10-11.) Martin's claim of error, therefore, turns on whether substantial evidence supports the ALJ's decision to discount that testimony

primarily because the record "[did] not document" treatment for "internal bleeding, liver cysts and stomach pain." (Tr. 23.) The Court believes that it does.

The Court begins with Martin's claim that the ALJ should have included greater walking, sitting, and standing limitations in the hypothetical he provided to the vocational expert. Martin cites the following testimony in support this argument:

> In regards to [Plaintiff's] testimony at the time of trial, he stated that he has pain in his back, side, stomach and cysts. (Tr. 446) Additionally, when asked about if he would be able to do his past job as a dishwasher he indicated no because of "the everyday pain that I have. When I reach it's all, like, it's hurt worse since then. And I have to reach up for the pots." (Tr. 452) He also indicated that he can only "stand now for 10, 15 minutes I hurt in my legs and my back and side hurts real bad." (Tr. 452) He also indicated that due to the pain that he wakes up with pain from his "side and my stomach" and has low energy all day. (Tr. 453) Additionally, when he is sitting down he has to prop up his feet. (Tr. 454)

(Pl.'s Mot. Summ. J. at 10.)

The ALJ did not unreasonably discount Martin's testimony regarding his ability to stand, walk, or sit. As the ALJ found, the administrative record is almost devoid of treatment notes for pain or cysts. It is true that a drug-store report shows that Dr. Al-Midani prescribed Martin a central nervous system depressant in February and March 2006 and that this was likely during the time Martin was working as a dishwasher. (*Compare* Tr. 126, *with* Tr. 438.) But a prescription of a single pain reliever and muscle relaxant does not strongly support Martin's testimony that he stopped working as a dishwasher because of liver cysts, a stomach mass, and "a lot of pain." (Tr. 439.) In other words, without further treatment records, it was not unreasonable for the ALJ to doubt Martin's claim that his pain was so severe that it limited standing to only 10 or 15 minutes. (Tr. 452.) Indeed, when the ALJ asked Martin if any physicians had provided functional limitations since

13

the time Martin stopped working as a dishwasher, Martin only mentioned that he was limited to lifting "like, 25, 10 pounds"—he did not mention any standing, walking, or sitting limitations. (Tr. 446.) Further, the ALJ reasonably noted that his assessment of Martin's ability to function was consistent with Martin's testimony about his daily activities. (Tr. 23.) In this regard, although not necessarily inconsistent with an inability to stand or walk for more than 15 minutes, Martin testified that his hobbies included walking up to three or four blocks and riding a bike "around the neighborhood, around the block." (Tr. 451.) In all, and especially given the lack of treatment records that could substantiate Martin's allegations of severe pain, the Court cannot say it was unreasonable for the ALJ to discredit Martin's testimony about his ability to stand, walk, or sit. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (providing that a court is "to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying").

The Court also disagrees with Martin's claim that the ALJ should have included greater mental or emotional limitations in the hypothetical to the vocational expert. Martin points out that he testified that his depression prevents him from participating in activities and socializing, and that the condition makes it difficult to focus and pay attention. (Pl.'s Mot. Summ. J. at 10; *see also* Tr. 454-55.) Martin says that this testimony is "backed up in the medical record." (*Id.*) In support of this assertion, Martin primarily cites mental-health treatment notes from 2004, including a self-completed report where he indicated "symptoms of hopelessness, helplessness, self-esteem, tearful, tired, appetite changes, nightmares, mood swings, restless, acting without thinking, aggressive, angry anxious, panic, worthlessness, trouble remembering things, obsessive thoughts, hearing things, pain, and shaking." (*Id.* (citing Tr. 289).) Martin, however, overlooks other evidence in the record,

14

including the conclusions of three experts: the DDS file-review consultant, psychiatrist Dr. Tien, thought that "[w]ithout physical problems, [Martin] [was] capable of doing a wide range of unskilled work" (Tr. 145); the DDS consultative examiner, psychologist Dr. Drawl, thought that Martin had not exhibited anything that "would socially or psychologically prevent Mr. Martin from seeking, obtaining, and maintaining gainful employment" (Tr. 341), and a DDS reviewing consultant, psychologist Dr. Kriauciunas, provided that Martin was able to "do simple tasks on a sustained basis." (Tr. 314). True, Dr. Kriauciunas provided that Martin was "moderately limited in ability to interact with the general public" and the ALJ did not include a corresponding limitation in the hypothetical to the vocational expert. (*Compare* 314, *with* 458.) It is also true that in a self-completed function report from 2005, Martin indicated considerable difficulties in social functioning, including that he argued and fought with others. (Tr. 94; *see also* Tr. 95.) But it remains that both Drs. Tien and Drawl thought that Martin did not have significant difficulties in social functioning. (Tr. 145, 341.) And at his administrative hearing, Martin testified that he got along with family, friends, and neighbors. (Tr. 449.) Indeed, the ALJ noted, "In social functioning, the claimant has moderate difficulties (though at the hearing I thought he was only mildly impaired in this area)." (Tr. 21.) Moreover, as the ALJ also noted, Dr. Drawl thought that Martin's test results indicated a "high level of symptom exaggeration." (Tr. 334; *see also* Tr. 23.) In all, the Court believes that substantial evidence supports the ALJ's decision to exclude a specific limitation for Martin's ability to interact with the general public.

In sum, Martin has not demonstrated that substantial evidence does not support the ALJ's choice of limitations in the hypothetical he provided to the vocational expert. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility

findings face an uphill battle.").

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision to discount Martin's testimony of severe functional limitations. As such, this Court RECOMMENDS that Defendant's Motion for Summary Judgment (Dkt. 15) be GRANTED, that Plaintiff's Motion for Summary Judgment (Dkt. 13) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the

response. E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson<br>
Laurie J. Michelson<br>
United States Magistrate Judge

Dated: January 24, 2014

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on January 24, 2014.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Laurie J. Michelson